# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
iPhone, model MQ472LL/A ) Case No. 1:19-Mj-134
Serial Number: FFNWX1Q7HXR6 )
MEID: 35615309288550 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Middle_____ District of _____North Carolina_____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922(g) | Felon in Possession of Firearm |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Terry M. Bryson, ATF Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/23/19 11:30 AM

_____
*Judge's signature*

City and state: Durham, North Carolina

Joe L. Webster, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: <br> iPhone, model MQ472LL/A <br> Serial Number: FFNWX1Q7HXR6 <br> MEID: 35615309288550 | Case No. 1:19-MJ-134 |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, T.M. Bryson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am currently assigned as a sworn police officer with the Greensboro Police Department ("GPD"). I have been a GPD police officer for approximately 8 years. While currently employed with GPD, I am assigned to the Criminal Intelligence Squad ("CIS"), which is tasked with identifying and investigating repeat violent offenders involved with crimes against persons, the unlawful possession and use of firearms, criminal gang activity, and the sales and distribution of illegal narcotics.

2. I am also assigned to the Violent Crimes Task Force ("VCTF"). With this assignment, I serve as a full-time Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). As a sworn ATF TFO, I am an "[i]nvestigative or law enforcement officer of the United States," within the meaning in Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516, as well as federal drug trafficking laws in violation of Title 21, United States Code, Sections 841 et seq., and Title 26, United States Code, Section 5861.

3. Your Affiant makes this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Yaime Ashhea SMITH, a convicted felon, has committed violations of 18 U.S.C. § 922(g) (possession of a firearm or ammunition by a convicted felon), in the Middle District of North Carolina, on April 13, 2019. Thus, there is probable cause to search the information further described in Attachment A for evidence of these crimes, as described in Attachment B.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The property to be searched:

   a. iPhone, model MQ472LL/A, Serial Number FFNWX1Q7HXR6, MEID number 35615309288550, hereinafter the "Device."

7. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

2

## PROBABLE CAUSE

8. On the evening of Saturday, April 13, 2019, Detectives with the Greensboro Police Department, Street Crimes Unit ("SCU"), were conducting surveillance of SMITH at Santa Fe Mexican Restaurant located on Gate City Boulevard, Greensboro, North Carolina.

9. SMITH has an extensive criminal history including weapons possession, narcotics possession and known to have a propensity for violence. SMITH currently has pending charges for Possession of a Firearm by Convicted Felon from an arrest by the Guilford County Sherriff's Department, North Carolina on November 2, 2018. SMITH also has numerous law enforcement alerts which include, known to be armed and dangerous and to approach with caution. SMITH is also a member of the criminal street gang known as the Rolling 60's Crips and is validated by the Greensboro Police Department. Furthermore, SCU Detectives had developed intelligence information from their surveillance efforts that SMITH may be in recent possession of a firearm.

10. Detectives observed SMITH exit the restaurant and enter as a passenger within a white in color, Nissan Altima, bearing North Carolina registration plate, TFP-5810. Detectives followed the vehicle and observed a traffic violation of speeding. SCU Detective M.P. O'Hal initiated a traffic stop on the Nissan Altima on Fairfax Road and the vehicle failed to readily pull to the shoulder of the road. The vehicle continued to travel for approximately 1/4 mile before pulling into a driveway and stopping.

11. Detective O'Hal approached the vehicle and observed a firearm in plain view within the vehicle and within a lunge able area of SMITH. SCU Detective's, D.A. Allis and J. Chasten also arrived and assisted with the traffic stop. SMITH was removed from the vehicle and handcuffed. A small amount of marijuana was located on SMITH's person.

3

12. Ms. Warner was also removed from the vehicle and handcuffed. Additionally, detectives detected an odor of marijuana emitting from the vehicle.

13. A search of the vehicle was completed. The firearm was found resting on the rear passenger side floorboard, behind SMITH. The firearm was a found to be a Smith & Wesson, model SW40OVE, .40 caliber, semi-automatic handgun.

14. SMITH was arrested for the possession of a firearm by convicted felon and transported to the Criminal Investigations Division ("CID") for interview and booking. ATF TFO D.J. Ciciarelli was notified of this significant arrest and he made contact with ATF TFO Bryson to assist in an interview of SMITH at CID.

15. Upon the arrival of TFO Ciciarelli and TFO Bryson to CID, SMITH was waiting in an interview room and had requested that detectives charge his cell phone for him. TFO Bryson read SMITH his Miranda statement of rights and SMITH waived his Miranda rights.

16. Upon completion of the interview, SMITH advised he wanted to speak with his lawyer by telephone before being fingerprinted. SMITH advised TFO Bryson his lawyer's phone number was in his cellphone. As TFO Bryson held the device, SMITH gathered phone numbers, TFO Bryson observed the "home screen" on the unlocked device displayed a photograph. Within this photograph were numerous persons gathered close together for a seemingly zealous staged group photo. Some of persons within this photo are known by TFO Bryson. A black in color rifle is visible in the photograph being held by a person known as Ashton Bell. Bell is a known criminal street gang member within an organization known as the Rolling 60's Crips. The firearm appears to be an AR-15 style rifle and Bell has the rifle shouldered and aiming at the camera. Another male is also pointing a handgun at the camera

17. Concluding the interview, SMITH was transported to the Guilford County Magistrate's Office and charged with Possession of Firearm by Convicted Felon as defined by North Carolina General Statute, 14-415.1.

18. Through training and experience, your affiant knows the device is an iPhone. An iPhone, otherwise known as cellular smartphone, features an advanced mobile operating system which combines features of a personal computer operating system with other features useful for mobile or handheld use. Smartphones, which are usually pocket-sized, typically combine the features of a mobile phone, such as the abilities to place and receive voice calls, create and receive text messages, videos and images with those of other popular digital mobile devices. They also transfer and receive data to digital assistants (PDAs), such as an event calendar, media player, video games, and Global Positioning System (GPS.)

19. Your affiant knows that it is common for persons involved in criminal activity to use their cellular smartphone device to communicate with other involved associates prior to, during and after the commission of a crime. Frequently persons involved in criminal activity often glorify, boast and publicize their illegal activities including their weapons, for many reasons including notoriety and the intimidation of others. This is done through pictures, video, multimedia, text messages, and incoming and outgoing phone calls and the vast variety of mobile applications available and accessed directly through the smartphone device. Modern smartphones are of great value for both lawful and unlawful purposes as they are an insistent part of daily life.

20. Furthermore, it is common for individuals to use their cellular smartphones to access the internet. Access to the internet via a cellular device typically creates a log of items which are viewed and searched on the internet and as such, creates a recorded history. It is

further known that this history is rarely completely deleted. A variety of third-party software components called "apps," are reliant on internet access for their functionality. Popular and commonly used apps such as Facebook, Instagram, and Twitter offer a range of tools for managing detailed information about all aspects of a person's life though installation, storage and use of the device.

21. Therefore, it is probable to believe that this iPhone device contains evidence of the unlawful possession of a Smith & Wesson, model SW40OVE, .40 caliber, semi-automatic handgun, by SMITH, a prohibited person after his arrest by GPD on April 13, 2019. Additionally, it is probable to believe the device contains additional evidence of the purchase, sale, storage and use of this firearm and other firearms including ammunition, would aid to establish evidence of the crime of Possession of Firearm by Felon, a violation of 18 U.S.C. § 922(g).

## TECHNICAL TERMS

22. Based on your Affiant's training and experience, he uses the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land-line" telephones. A wireless telephone usually contains a "call-log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address

books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

  b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

  c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

8

Case 1:19-mi-00134-JLW Document 1 Filed 04/23/19 Page 9 of 16

f.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

23.   Based on your Affiant's training, experience, and research, he knows that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In his training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24.   Based on your Affiant's knowledge, training, and experience, he knows that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

9

25. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

 a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

 b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

 c. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, your Affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

28. WHEREFORE, based on the information presented in the this Affidavit, there is probable cause to believe, that the Device contains evidence of violations of Title 18, United States Code, Section 922(g). Therefore, your Affiant submits that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

11

Respectfully submitted,

_____
Terry Bryson
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me
On April 23rd, 2019:   11:30 AM.

_____
HONORABLE JOE L. WEBSTER
UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A

The device is currently located at the Greensboro Police Department, Computer Forensic Lab, Greensboro, North Carolina.

Property to be searched:

a. iPhone, model MQ472LL/A, Serial Number: FFNWX1Q7HXR6

   MEID: 35615309288550

## ATTACHMENT B

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Section 922(g).

1. Records and information referencing or revealing the possession, use, procurement or ownership of firearms and violations of the statute described above in the form of:

    a. Records and information referencing or revealing the use or ownership of the device, iPhone, model MQ472LL/A, Serial Number: FFNWX1Q7HXR6, MEID: 35615309288550;

    b. Images, videos or any other digital media referencing or revealing a Smith & Wesson, model SW40OVE, .40 caliber, semi-automatic handgun and an AR-15 style rifle;

    c. Images, videos or any other digital media referencing or revealing firearms;

    b. Records and information referencing or revealing communications or interactions regarding firearms in the form of text messages, instant messages, audio recordings, emails, videos, stored location information, names and stored contact information, call logs, and website addresses and website browser history;

    d. Records and information referencing or revealing communications or interactions regarding firearms in the form any social media account information and content, including user names and passwords, email, cloud storage;

    e. Records and information referencing or revealing participation, communication or association in criminal street gang activity and the illegal possession of firearms;

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as

2

microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

3